[See Case No. 2,337a.]

LOUD v. PHILADELPHIA & READING R. CO. See Case No. 8,422.

LOUD. The GEORGIA D. See Case No. 5,353.

LOUDER (UNITED STATES v.). See Case No. 15,630.

## Case No. 8,525.

LOUDON v. FIRST NAT. BANK OF WILMINGTON.

[2 Hughes (1877) 420; [1] 15 N. B. R. 476.]

District Court, E. D. North Carolina.

BANKRUPTCY — ILLEGAL PREFERENCE — SUBSTITUTION OF NOTES—KNOWLEDGE OF INSOLVENCY.

1. Where an insolvent, with knowledge of his condition and with intent to give his bank a preference, substitutes small notes, payable immedi-

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

ately, for older and larger ones held by the bank, some of which have already matured, such substitution as a condition for a further loan having been demanded by the president of the bank with knowledge of the insolvent's condition, and thereby the bank is enabled more easily to and does obtain judgment upon said notes, and seize and sell the insolvent's property upon executions issued thereon, such seizure and sale will be declared void, and the amount realized at the sale will be ordered to be paid to the assignee of such insolvent.

[Cited in Brown v. Jefferson Co. Nat. Bank, 9 Fed. 264.]

2. Where a bank demands of a depositor, who has theretofore always been prompt in his payments, and who has a note overdue and others about to mature, which he has made no arrangements to meet, that he shall, as a condition of a further loan which he requires to meet a borrowed note, substitute smaller notes, payable immediately, for those then held by the bank, and also for such further loan, in order to enable it more easily to obtain judgment thereon, held, that the demand was made with knowlegde of the applicant's insolvency.

In bankruptcy.

M. Loudon, for complainant.

Adam Empie and W. S. & D. J. Devane, for respondent.

BROOKS, District Judge. This is a bill filed by John Loudon, assignee of Jacob Lyon, in which the complainant alleges as follows: First. That the said Lyon was, on and some time prior to the 8th day of July, 1874, a merchant, and doing business in Wilmington, and was on and before that day indebted to the First National Bank of Wilmington, N. C., in a large sum. Second. That at and before the date mentioned, the said Lyon was insolvent, and being so insolvent, and in contemplation of insolvency and bankruptcy, and with intent to create a preference for the said bank over his other creditors, did procure his property to be seized under executions. That nearly all the property possessed by said Lyon was so procured by him to be seized and sold under executions in favor of said bank, and with intent to evade the provisions of the bankrupt law [of 1867 (14 Stat. 517)], and to prevent his property from coming to the hands of his assignee. Third. That at the time the said Lyon so procured his property to be so seized with the intent aforesaid, he, the said Lyon, well knew that he was insolvent, and that when the preference was accepted the said bank well knew that the said Lyon was insolvent, and that a fraud upon the rights of his other creditors was intended. The complainant therefore insists that the seizure and sales under the executions in favor of the bank were void, that no valid lien was thereby created, and asks a decree of this court for the value of the goods so seized and sold. The defendant corporation answers by its president, E. E. Burruss, in which they admit that Lyon, the bankrupt, was, before and on the 2d July, 1874, indebted to the bank in the sum of three thousand dollars, evidenced by notes as follows:

One due on that day for eight hundred dollars. one to be due on the 10th of the same month for eight hundred dollars, one on the 18th of that month for one thousand dollars, and one for four hundred dollars. to fall due on the 14th August, 1874. That after the first note mentioned was due, application was made for the bankrupt to the bank for the further loan of one thousand dollars, with the statement that this sum was desired by the bankrupt to pay a debt then mature in the city of Philadelphia. That the person who made this application for Lyon proposed for him that he would execute his notes for two hundred dollars each, payable instanter, insisting that notes so given would be as good security as the bank could have, as, in case of necessity for such course, judgment could be recovered on such notes in a very short time, and liens created upon the property of the maker. This proposition was declined by the bank, with the suggestion that if Lyon would then execute his notes, twenty in number, for two hundred dollars each, so as to cover his then entire indebtedness to the bank, as well as the one thousand dollars then desired as a further loan, he would be accommodated with the further loan then desired. This proposition of Mr. Burruss was not accepted by the attorney of Mr. Lyon, he assigning as a reason that he had no authority for such a renewal or change of Lyon's existing indebtedness to the bank. but that he would inform Mr. Lyon of the proposition. On the 7th of the same month Lyon came in person to the bank and renewed his request for the further loan of one thousand dollars, stating that he desired it to prevent the protest of debt then mature in Philadelphia. The proposition of Mr. Burruss was then renewed and acceded to by Lyon, and on the next day, the 8th July, Lyon executed to the bank twenty notes for two hundred dollars each, all payable instanter, and for these the further loan of one thousand dollars was extended, and the notes of Lyon for three thousand dollars, as before mentioned, were surrendered to him. The answer further states that, at the time the two hundred dollar notes were executed by Lyon and accepted by the bank. he did not know or have reasonable cause to believe that Lyon was insolvent or acted in contemplation of bankruptcy or insolvency, but on the contrary he, the said Burruss, believed him to be entirely solvent. That the said Lyon had kept an account with the bank for several years, and had always been very prompt in his payments to the bank; that when the proposition for the two hundred dollar notes to be executed in lieu of the notes as they then stood was made by him for the bank, he, Burruss, had no suspicion of the insolvency of Lyon—that such requirement was not made by him on account of any such suspicion. That when the two hundred dollar notes were accepted, and the old notes theretofore held by the bank were surrendered, they were not accepted with any view to a preference over any other creditor of the said Lyon. But on the contrary he, Burruss, did not know of any other debt due by Lyon, except that which he owed to the bank and that mentioned as due in Philadelphia. That, in proposing the change to be made in the notes, and in accepting the two hundred dollar notes, there was no other purpose on the part of the bank than to obtain the best security he could for the debt due the bank. It is not denied in the answer that Lyon was insolvent when the notes for two hundred dollars were made and substituted as before stated. On the 16th July, 1874, Burruss, on being informed that some of the other creditors had sued Lyon, and that others intended to do so, caused warrants to be issued and served on each one of the twenty notes. Judgments were obtained and executions issued, under which all the goods of Lyon were seized the same day, and (except such as were set apart to Lyon as exempted by the state law) were subsequently sold by the officer to satisfy these claims.

To entitle the plaintiff to recover in this case it is necessary that three inquiries shall be made, and all of these should be answered in the affirmative. First. Was Jacob Lyon insolvent on the 8th day of July, 1874, or did he act in contemplation of bankruptcy or insolvency on that day in executing and delivering the two hundred dollar notes to the bank for the old and larger notes held, at that time, by the bank against him? Second. Was this making and substituting the two hundred dollar notes for the old and larger notes, done by Lyon with intent on his part to create a preference, or allow to the bank an advantage over his other creditors then holding other claims of the character of those then held by the bank? Third. Did the bank, at the time the two hundred dollar notes were so made and accepted, know that Lyon was insolvent, or acted in contemplation of insolvency or bankruptcy, or that a fraud upon the provisions of the bankrupt law was intended?

It would have been as idle and unavailing as it would have been immoral in the respondent to have denied that Lyon was hopelessly insolvent. in fact, when he applied for the further loan of one thousand dollars. and when he executed to the bank the two hundred dollar notes in the place of the larger notes due the bank. There is no evidence to show that he incurred any further debt. after that time, and before the bankruptcy proceedings were commenced against him on the 7th September of the same year, while it is sufficiently proved that there was no property or effects surrendered to the assignee from which any creditor could hope for any dividend. That the debts proved against his estate amounted to over nineteen thousand dollars. in which estimate the four thousand dollars due the bank and some oth-

er debts were not included, when the highest estimate placed upon his property at the time of the seizure of his goods (that placed by Lyon himself) was nine thousand dollars, and out of which his exemptions were to be taken. So the insolvency of Lyon, at the time of his application for the further loan and the substitution of the two hundred dollar notes, as a fact, is unquestionably established. Then was the demand of Burruss, that two hundred dollar notes should be executed and substituted for the larger notes then held by the bank, yielded to by Lyon with a knowledge of his condition, and with a view to give the bank a preference over any of his other creditors? That the requirement was made by Burruss and persisted in by him is abundantly shown by the answer and by the deposition of Lyon; that this demand was yielded to by Lyon with intent on his part to give thereby a preference over his other creditors holding claims of like amounts, is the important part of this second inquiry.

In the examination of this branch of the inquiry two questions are suggested. Did Lyon know that he was insolvent on the 8th July when the two hundred dollar notes were executed by him? Did he know what might result from such substitution, if such circumstances should arise as would incline Mr. Burruss to avail himself of the advantage thereby given? Both these questions must be answered in the affirmative. No one so certainly and fully knew his condition as Mr. Lyon himself, for he was a merchant of sufficient intelligence to conduct his business, keeping a bank account and paying his debts promptly for some years. This requirement of Mr. Burruss—which I will show hereafter was unusual and even extraordinary—was suggested by the anxiety of Mr. Lyon to protect himself from the protest of a debt, which he knew as a merchant would affect seriously, if not destroy, his credit in Philadelphia (the city in which he mainly purchased) and at Wilmington, if not, indeed, in all the country. If Mr. Lyon was so properly anxious about this debt as to make repeated efforts, and in this unusual way to borrow the money to save himself from protest, can it be supposed that he had, even for the time, entirely lost sight of all his other debts, and especially those which are shown to have been then due, or became due and were sued on within the short period of a week thereafter? Intelligent merchants do not lose sight of their debts, and especially do they keep in mind such as mature or are soon to mature. It is not necessary now to apply that strict and technical definition of the term insolvency which the courts so clearly hold as applicable to merchants, traders, and bankers. It is beyond all question true that Mr. Lyon well knew that he was insolvent, and largely so, when he complied with the requirements of Mr. Burruss in substituting the two hundred dollar notes,

even according to the most liberal meaning of that term. Then did he with this knowledge substitute his small notes for his larger notes with intent to procure the result which followed? I think it is equally as clear that he did. Mr. Lyon's first and most cherished object was to obtain the loan of one thousand dollars. So it might be said of one who, being embarrassed or insolvent, would make or acknowledge a fictitious debt. He would generally have as his first object to retain his property; to the actual result of his act as to his bona fide creditors he might feel more indifference, and he might even regret such effect as to them. But could it be said that he did not intend that such results should follow his act of creating a fraudulent debt? Persons may, and indeed often do, regret a result which they know will follow from an act which they feel constrained to commit. Lyon knew that he had neither money nor property sufficient to pay his debts, but on the contrary, even upon the most liberal valuation, there was a large deficiency. This was his situation and his information as to his condition when he executed the notes, upon which the very hasty and summary action was taken at the end of one short week thereafter. The result was the seizure of all his visible property on execution in behalf of this favored creditor. So we behold as a result of this act, of which the plaintiff complains, within a very few days the easy and solvent merchant (apparently so, as the respondent insists) changed to a destitute bankrupt, with an estate to surrender to his assignee of not exceeding thirty dollars—not sufficient to meet the most moderate estimate of the costs—to say nothing of the additional exemptions to which the bankrupt is entitled under the bankrupt law. All his property was taken under execution issuing upon the notes so substituted for notes, none of which would have been liable to such summary proceedings—which could not by possibility have been reduced to judgment and execution before the bankruptcy of the debtor. And when Lyon states, as he does in his deposition, that he knew that the effect of such a substitution of the small notes for the larger ones would be to entitle the bank to this summary proceeding, it cannot, I think, be reasonably contended that he did not intend that result. If he did so intend at the time the small notes were substituted, he procured that which resulted from that act —that is, the seizure of his goods under execution with intent to create a preference for an existing debt, and to defeat the provisions of the bankrupt act. "It is the intent with which the new notes were given which must determine the validity of the lien" is the language of Mr. Justice Miller in Little v. Alexander, 21 Wall. [88 U. S.] 500. The learned counsel who argued this case for the respondent urged that when sued on these notes before the justice of the peace, Mr. Lyon had

no defence, consequently he made none—to have entered a false plea would have been immoral and wrong—and insists that this case comes within the principle decided in Wilson v. City Bank. 17 Wall. [84 U. S.] 473. I admit there must be the positive purpose of doing some act forbidden by the statute, and the act relied on and described must be done in the promotion of such unlawful purpose. Mere passive inaction on the part of the debtor is not sufficient, there must be something more than the mere submission to the legal rights of the creditor. The language of the learned justice in Little v. Alexander [supra], in distinguishing that case from that last cited, then relied upon for the same purpose, so well expresses my views in this case that I prefer that to any expression of my own. "But no careful reader of that case will fail to see, that if the debtor there had done anything before suit, which would have secured the bank a judgment with priority of lien, with intent to do so, that the judgment of this court would have been different from what it was." I adopt the view of the court as expressed in Wilson v. City Bank [supra]. The terms "procure" and "suffer," as employed in the bankrupt law, are of very similar import. If Lyon had done no positive act, after he became insolvent, which had the effect to promote the obtaining of these judgments in favor of the bank, in such way and in such time as to create a priority as against other creditors, then it could not be said that he had procured or suffered his property to be seized in violation of this provision of the law.

The remaining question to be determined is: Did the bank know that Lyon was insolvent, or that he was acting in contemplation of insolvency or bankruptcy when he executed the small notes mentioned? In contemplation of law, the bank is held to know that which was known to Mr. Burruss, its president—a gentleman familiar with its business—both the objects to be accomplished by such corporations, and the means by which these objects are attained. Surely a different rule would not be just to apply to corporations. They are only bodies composed of individuals associated for convenience in business, and while they may sue and be sued as individuals, that knowledge which is known to guide and control the conduct of individuals can only be ascertained, when it becomes important in cases affecting corporations, by applying the proper rule to ascertain the motive for individual action. And we know that it is very often the case that, in the conduct of individuals, the motive and knowledge with which a party acts determines the validity or invalidity of his act. "There is no divinity in a corporation which hedges around and protects it from the rules applicable to individuals." Then did Mr. Burruss know that Lyon was insolvent when he received from him his two hundred dollar notes in lieu of the larger notes then held by the bank against Lyon? If he did not, then the preference which resulted was effectual and valid, if he did, then it was otherwise; the judgments, executions, and levies thereunder must be declared void by this court, and the complainant will be entitled to recover. In considering this question, it is clear that we must often, indeed most frequently, resort to the circumstances attending a transaction, to determine the mind, the will, or intention with which the party acted—the stimulant or inducement to the action. The averment in Mr. Burruss's answer, and his statement in his deposition that he did not know, at or before the execution and substitution of the two hundred dollar notes, that Lyon was insolvent, but that on the contrary he believed him to be solvent, I have not overlooked. But I am, nevertheless, required to determine whether this averment is not outweighed by the circumstances attendant upon this transaction, so well known to Mr. Burruss, and which would have influenced the action of any other intelligent business man.

The leading object and purpose of the bankrupt law is the equal distribution of the estate of an insolvent person among his creditors, except only in the cases provided in the law. Any advantage, priority, or preference claimed by a creditor, if not within one of these provisions of the law, is declared void and of no effect. The complainant insists that the lien set up by the defendant is not only not one expressly sanctioned by the law, but, on the contrary, is expressly forbidden by the law, because he says that the respondent acted in the exchange of the notes under such circumstances as imparted to him full knowledge of Lyon's insolvency. It is insisted that Mr. Burruss knows best the information and intent with which he acted. That may be true, if we cannot be impressed more strongly by his statement as to the information under which he acted than we are obliged to be by the circumstances surrounding the transaction, which seem to oppose such statement. Mr. Burruss's statement in the answer is not conclusive, neither is it so as regards his deposition. If it were otherwise, there would be nothing upon this question of knowledge for the court to determine, but to ascertain that the party claiming a lien or priority had averred or testified that the debtor's insolvency was not known to him at the time such priority was created. If that be correct, a mere affidavit of the party to that effect would be as effectual as that statement in an answer or deposition. What are these circumstances? Mr. Lyon was and had been a merchant, and the corporation defendant a bank doing business in Wilmington for several years. The merchants in that city, with but two exceptions stated, purchased their goods on credit. Lyon had kept an account with the bank for some years, and had always been prompt in his pay-

ments. Now he stands indebted to this bank in the sum of three thousand dollars, not a large sum, it is true, for a merchant in good standing to owe a bank. But a part of this debt, eight hundred dollars, is then past due; then, according to all banking rules, the name of such a debtor stands dishonored; there is no part of this indebtedness of Lyon to the bank evidenced by notes 'for an amount within the jurisdiction of a justice of the peace. Under all these circumstances Mr. Lyon makes application to the bank for a further loan of one thousand dollars. Mr. Lyon states in his deposition in substance as follows: On the 7th of July I made this application, when Mr. Burruss replied, "You are now laying over in bank," to which Lyon rejoined, "I know that, but I must have one thousand dollars," and stated that the purpose for which he desired it was to pay a debt then due in Philadelphia, "which is a borrowed note, and which has to be paid." The money was not then loaned. An agent or attorney of Lyon's called at the bank, and stated that for the one thousand dollars then desired, he, Lyon, would execute to the bank two hundred dollar notes, and that would be as good security as could be desired, for then, if necessary, he, Burruss, might warrant and obtain judgment, execution, and lien upon his property in a very short time. Mr. Burruss declined, but proposed that if Lyon would execute two hundred dollar notes for the sum he owed the bank as well as the one thousand dollars then desired, he would make the further loan. This proposition the agent of Lyon was not authorized to accept, but said he would inform Mr. Lyon, who soon thereafter returned to the bank, when the proposition of Mr. Burruss, respecting the two hundred dollar notes for the existing debt, was renewed. Lyon says, "I told him I don't like to give two hundred dollar notes, unless he promised me not to push them, and give me a chance to pay them off as fast as I can. All this he promised me faithfully." That which followed material to this inquiry has been already stated. Now it is seen that Mr. Burruss had certain and positive information of the insolvency of Lyon, according to the construction of that term by the highest tribunals of our country as applicable to merchants and traders.

In the case of Toof v. Martin, 13 Wall. [80 U. S.] 40, Mr. Justice Field expresses very distinctly what is meant by the term insolvent or insolvency when applied to merchants. In that case it was contended that if the debtor could not pay his debts in the ordinary course of business, that is, in money as they fell due, he was insolvent. That learned judge says: "The rule thus laid down may not be strictly correct as applied to all bankrupts. The term insolvency is not always used in the same sense; it is sometimes used to denote the insufficiency of the entire property and assets of an individual to pay his debts. This is its general and popular meaning. But it is also used, in a more restricted sense, to express the inability of a party to pay his debts as they become due in the ordinary course of his business. It is in this latter sense that the term is used when merchants and traders are said to be insolvent, and as applied to them it is the sense intended by the act of congress." And can this court apply a different meaning to that term in determining as to the condition of Mr. Lyon? Had Mr. Burruss a right, in determining upon his condition, to apply a different construction? I think the facts of the case show conclusively that he in fact followed this construction in the estimate he then made of Mr. Lyon's condition. Never before in all his dealings with the bank had Mr. Lyon been required to make two hundred dollar notes—not even for present loans. It was not usual to require that of any of the customers of this corporation, when it would have been in violation of no law to have done so for loans then made, without regard to the pecuniary condition of the borrower. Why, then, did Mr. Burruss make and persist in this extraordinary requirement of this prompt customer, unless he saw a necessity for that advantage he might thereby gain in a race of diligence with the other creditors in respect to that existing debt? If convenience merely was to be promoted by any change of the existing debt, consolidation would have been suggested, and one note would have been taken for the whole, instead of fifteen little papers. Then there was another significant circumstance which was not without force, sufficient to have aroused the apprehensions of any bank officer with the information before him. Here was one note for eight hundred dollars past due, and another of that amount to be due in two days, and not only no provision being made for their payment, but evidences afforded by the conduct of the debtor that they would not be soon paid at least, for he was then resorting to unusual and even extraordinary means to borrow the further sum of one thousand dollars to pay a borrowed note to prevent a protest, and which, to use his own language, "had to be paid." And here, too, was this further fact, that besides these there was another note of one thousand dollars to mature in ten days thereafter, and another still which would only mature at the remote period of thirty-six days. Under these circumstances it seems to me that it would be a reflection upon Mr. Burruss as a bank officer, that I am disposed to avoid, if I should find that he was not apprehensive about the safety of the debt, and that when the requirement of the small notes was made, it was not made in view of the very contingency which was so near at hand, and upon the first blush of which Mr. Burruss so promptly acted. If this was all by accident, and not designed, it must be admitted that there was in this case a series and very close connection of most fortuitous circumstances, that render the case peculiar. But it is insisted that Mr. Larkins and other witnesses examined for the respondent believed Mr.

Lyon was solvent. While this is true, what did Mr. Larkins know of the condition of Lyon? True it is that Mr. Larkins is an intelligent gentleman, and the cashier of another bank in Wilmington, yet Lyon had not dealt with his bank. He knew nothing of any debts he owed, or how he was prepared to pay them. And so with the others who testified for the respondent as to Lyon's solvency. If Mr. Larkins had known of Lyon's indebtedness to the defendant bank, that a part of it was past due (which means dishonored), much of it not due in many days to come, and that Lyon was so pressed upon other debts as to accept even a further loan of money upon the extraordinary terms required by the bank, I am sure Mr. Larkins would never have said that he believed him solvent; certainly he would not in view of the proper meaning of that term as applicable to merchants. It cannot be said that so intelligent a gentleman as Mr. Burruss acted without a motive, indeed he states that his purpose was to obtain for the bank the best security he could. In arriving at this conclusion I have not failed to consider the effect of the amendment of June 22, 1874 [18 Stat. 178]. and I recognize that which some of my brethren do not, a difference between the terms "reasonable cause to believe" and "knowing."

The judgment of the court was, that the complainant recover of the defendant the sum of four thousand dollars, the value of the goods sold under the executions in favor of the bank, upon the two hundred dollar notes, which were substituted for the larger notes held by the bank.